
FILED
DISTRICT COURT OF GUAM
SEP 24 2015
JEANNE G. QUINATA
CLERK OF COURT

John Richard Bordallo Bell
john.r.b.bell@gmail.com
The Law Office of John Richard Bordallo Bell
341 S. Marine Corps Drive
RK Plaza Suite 309
Tamuning, Guam 96913
Tel: (671) 488-1159

Sebastian L. Miller (*pro hac vice* admission forthcoming)
sebastian@sebastianmillerlaw.com
Sebastian Miller Law, P.C
900 Lafayette Street, Suite 201
Santa Clara, CA 95050
Tel: (408) 348-1728
Fax: (408) 716-3149

Attorneys for Plaintiff
Arlenita A. Camacho

# UNITED STATES DISTRICT COURT

## DISTRICT OF GUAM

| | |
|---|---|
| ARLENITA A. CAMACHO,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | CIVIL CASE NO. CV **15-00034**<br><br>**COMPLAINT FOR:**<br><br>1. VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (DISCRIMINATION IN EMPLOYMENT; 42 U.S.C. § 12112)<br><br>2. VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993 (INTERFERENCE WITH FMLA RIGHTS AND RETALIATION FOR EXERCISING FMLA RIGHTS; 29 U.S.C. § 2615)<br><br>3. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY<br><br>**JURY TRIAL DEMANDED** |

1
COMPLAINT OF ARLENITA CAMACHO FOR DAMAGES AND EQUITABLE RELIEF

## INTRODUCTION

1. Plaintiff Arlenita A. Camacho ("Plaintiff") was treated callously and experienced transparent discrimination in employment during the months leading up to the termination of her employment by United Airlines, Inc. ("United"). By this complaint, Plaintiff seeks some measure of justice for the discrimination and retaliation that rendered her working conditions intolerable, resulted in her separation from United and which continue to cause significant economic harm.

2. Plaintiff worked for United from 1995 to 2015. Plaintiff worked in California for her first sixteen years with the company and worked in Dededo, Guam from September 2011 until February 2015, when her employment was terminated. Plaintiff's performance reviews at United were, with one glaring exception, universally "on track" or excellent. Plaintiff received her sole poor performance review on November 20, 2015. Plaintiff received this review in the form of a performance improvement plan (the "PIP"). Plaintiff was placed on the PIP just three days after she informed her supervisor that she needed to take a leave of absence in order to travel to the Philippines and receive treatments for medical problems that were affecting her shoulder. This was Plaintiff's second request for a medical leave of absence in 2014. In July she had required three weeks of off-island treatments for a heart condition. After placing Plaintiff on the PIP, United personnel pressured Plaintiff to retire, constructively discharged her, and terminated her employment.

3. There is an obvious temporal and causal nexus between Plaintiff engaging in the protected activity of seeking an unpaid leave of absence in order to treat a disabling medical condition and United's adverse employment actions against her. Indeed, only a few days separate Plaintiff's protected activity and United's retaliatory conduct. On November 17, 2014, Plaintiff sought unpaid leave as a reasonable accommodation under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA") and as required by the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601, *et seq.* ("FMLA"). Three days later she was placed on a PIP.

4. Plaintiff's work provided her with dignity. The PIP—which was inaccurate and which United applied to Plaintiff due to a discriminatory and retaliatory animus toward her disabilities and her need for medical treatment—was an affront to her sense of self-respect. Moreover, the PIP was forced on Plaintiff at the same time that she was experiencing potentially life-threatening medical problems. Nevertheless, Plaintiff's supervisor, Annie Duenas, demanded that she sign the PIP before leaving for the Philippines. Plaintiff responded emotionally and stated that given the PIP's glaring falsehoods and unlawful purpose she would rather retire than sign it.

5. There was no practical reason, let alone a legal one, that Plaintiff had to sign a piece of paper acknowledging receipt of the PIP. It was sufficient that United email it to her. But, rather than allow Plaintiff to receive her medical treatments in peace, Ms. Duenas spent the next week hounding Plaintiff about a retirement date. Ms. Duenas' conduct—taking advantage of an emotionally vulnerable employee—was despicable and done at the behest of her supervisors who were aware of the situation. Ultimately, Plaintiff relented to Ms. Duenas' pressure in late November 2014 and agreed to retire from United effective February 17, 2015. Plaintiff chose this date because she believed her medical treatments would be finished before then. Under the circumstances, Plaintiff was forced to retire—*i.e.* constructively discharged—because no reasonable person would have continued working after being victimized with a patently discriminatory and retaliatory PIP and hounded about a retirement date. Furthermore, United should have known better than to accept Plaintiff's "retirement" as it was made under duress and as a protest against her supervisor's discriminatory and retaliatory conduct

6. A few months later, Plaintiff contacted United and stated that she was forced to retire under pressure, that she had acted hastily and that she wished to rescind her retirement and/or extend her "retirement" date. She made these statements via email in early February 2015, before her "retirement" date of February 17, 2015. At a minimum, she sought to extend her retirement date by a few months in order to take advantage of her accrued sick leave (at the time she had over a month of paid leave) and access to health insurance through United

(because her treatments were not complete). United refused and terminated Plaintiff's employment. As a result, Plaintiff was terminated on February 17, 2015. At the time she separated from the company, United refused to make any payment to Plaintiff in order to compensate for the hundreds hours of accrued but unused sick leave that she had as of her "retirement" date. In fact, for a number of weeks United denied that Plaintiff had any accrued sick leave and only agreed to pay Plaintiff when she produced documentation to this effect. Finally, United retaliated further against Plaintiff by marking her as ineligible for rehire.

## JURISDICTION, VENUE AND ADMINISTRATIVE EXHAUSTION

7. This action is brought pursuant to federal statutes and the laws of the Territory of Guam. This Court has jurisdiction over Plaintiff's case pursuant to 28 U.S.C. § 1331. The thrust of Plaintiff's claims are violations by United of two federal statutes: the ADA and the FMLA. This Court has jurisdiction over Plaintiff's claims under the ADA pursuant to 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(f)(3). This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and United are citizens of different states—Plaintiff is a citizen of California and United is a citizen of Illinois and Delaware. Further, this Court may exercise supplemental jurisdiction over Plaintiff's claims that arise under the laws of the Territory of Guam pursuant to 28 U.S.C. § 1367 because those claims so related to Plaintiff's claims under the ADA and the FMLA that they form part of the same case or controversy under Article III of the United States Constitution.

8. This Court is the proper venue because the unlawful employment practices described herein were committed within the Territory of Guam. Thus, this Court is a proper venue under the ADA (42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(f)(3)) and the FMLA (29 U.S.C. § 2617(a)(2) and 42 U.S.C. § 1391).

9. Plaintiff has complied with all conditions precedent to maintain an action under the ADA. Specifically, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 18, 2015—fewer than 180 days after the last date that she experienced discrimination on the basis of her disabilities. The EEOC issued a Federal

Notice of Right to Sue to Plaintiff on September 11, 2015 and Plaintiff received that notice on September 15, 2015. Plaintiff timely filed this lawsuit following the date that the EEOC issued a notice of right to sue to her.

## PARTIES

10. Plaintiff, Arlenita A. Camacho, is a U.S. citizen who worked and resided in Guam from September 2011 until February 2015. Plaintiff now resides in California. Plaintiff was employed by United from February 1995 until February 2015 and worked for United in Guam from September 2011 until February 2015. Plaintiff provided more than 1,250 hours of service to United during the twelve-month period immediately preceding her leave of absence in November 2014 and also had provided more than 1,250 hours of service during the twelve-month period prior to February 2015 when United terminated her employment.

11. Defendant United is a Delaware corporation with its principal place of business in Illinois and therefore United is a citizen of Delaware and Illinois. At all relevant times, United employed more than five hundred employees throughout the United States and more than fifty employees within seventy-five miles of the facility in Dededo, Guam where Plaintiff worked.

## FURTHER RELEVANT FACTS

12. Plaintiff was employed at United as an Analyst. For sixteen years she worked in California and for three years she worked in Guam. Plaintiff performed well throughout her tenure at United, both in California and Guam, and never received a negative performance review prior to becoming disabled by the serious medical conditions alleged herein.

13. In July 2014, Plaintiff took a leave of absence from work in order to treat a medical condition she developed known as Mitral Valve Prolapse with severe regurgitation. This condition affected Plaintiff's heart and had to be treated in the Philippines. The condition constituted a disability that substantially limited many of Plaintiff's major life activities, including working, walking, answering phones and other activities. Plaintiff was disabled and

United regarded her as such. Plaintiff's leave of absence in July 2014 constituted a reasonable accommodation of a disability under the ADA and a protected leave under the FMLA.

14. Four weeks later, Plaintiff returned to United's office in Guam. During Plaintiff's FMLA/ADA leave in July, Annie Duenas was installed in United's Sales Resource Group in Guam and began serving as Plaintiff's direct supervisor. From August through October 2014, Plaintiff worked without any accommodations, however, she continued to have heart problems related to the Disability and also developed pain in her upper arm and shoulder. Plaintiff noted these pains and problems to United. On November 1, 2014, Plaintiff's doctor requested off-island services to treat her shoulder condition. This request was approved by United on November 12, 2014. On November 17, 2014, Plaintiff informed Ms. Duenas about her impending leave to treat her shoulder condition, which would also be covered under the FMLA (as a serious medical condition) and the ADA (as a disability because the shoulder conditions substantially limited one or more of Plaintiff's major life activities). Plaintiff's second disability-related leave would require her to leave United's office in Guam and miss a few more months of work.

15. Just three days after Plaintiff informed Ms. Duenas about her second FMLA/ADA leave, Ms. Duenas handed Plaintiff a PIP and asked her to sign it. Plaintiff was shocked by this development as her performance had not previously been called into question and the timing of the PIP seemed so clearly linked to her request for additional FMLA leave and additional accommodation of her disabilities in the form of unpaid leave. Moreover, the PIP inaccurately and fraudulently claimed that Plaintiff's performance was inadequate or needed improvement. Plaintiff reacted emotionally, saying that she'd rather retire than sign the PIP.

16. At that point, Ms. Duenas saw an opening to pressure an emotionally vulnerable employee into separating from United. Thus, Ms. Duenas called Plaintiff repeatedly, including three times from November 17-26, each time demanding that Plaintiff provide her with a retirement date. Plaintiff sought to stop these calls by signing the PIP on November 20, 214 in

the presence of United's local Human Resources executive, Robbi Crisostomo. This is despite the fact that there was no *bona fide* reason for Plaintiff to be required to sign the PIP in the first place. Further, Ms. Duenas had no *bona fide* reason to pressure Plaintiff into retiring simply because Plaintiff rightfully disagreed with the false statements in the PIP. Nevertheless, Ms. Duenas and United were persistent and, eventually, Plaintiff capitulated and stated that she would retire on February 17, 2015. At that time, Plaintiff believed an additional twelve weeks on the payroll would provide sufficient time to treat her disabilities. Plaintiff was also afraid of engaging in continued confrontations with her supervisors regarding the arbitrary and unfair nature of the PIP.

17. In December 2014, Plaintiff had surgery to treat problems with her shoulder. Initially, Darlene Garcia, a member of United's Human Resources team, stated that Plaintiff's health problems did not constitute a serious health condition and therefore the FMLA did not apply to her leave. This was clearly wrong and United eventually approved the leave as FMLA-qualifying, but not until January 2015. On February 3, 2015, Plaintiff requested an extension of her sick leave and asked to rescind the "retirement" that United had forced her into—at the time she had hundreds of hours of unused sick leave—but United refused to extend her leave and processed her retirement effective February 17, 2015.

18. With the benefit of hindsight, it is clear to Plaintiff that: (i) there were no legitimate grounds to place her on the PIP; (ii) she was placed on the PIP in retaliation for taking leave to treat her disabilities and that her decision to seek leave constituted protected activity under the ADA and the FMLA; (iii) she was wrongfully pressured into stating that she would retire and the motivation for that pressure on her stemmed from a discriminatory animus toward her disabilities and retaliatory intent related to the FMLA-protected leave; and (iv) United wrongfully refused to provide her with a payment for her accrued sick leave.

19. Consistent with the foregoing discriminatory intent, United initially processed retirement paperwork that deemed Plaintiff ineligible for re-hire. United also claimed that Plaintiff was ineligible to receive a payout for her unused sick leave.

20. On March 2, 2015, Plaintiff sent an email to United seeking to return to work, where she reiterated that her retirement was processed in haste. Plaintiff specifically stated that the PIP was unfair and she felt pressured to retire. United refused her request.

21. In sum, United discriminated against Plaintiff based on her disabilities in violation of the ADA and retaliated against her for taking leave under the FMLA, violating federal law and the laws of the Territory of Guam.

## FIRST CAUSE OF ACTION

## DISABILITY DISCRIMINATION; 42 U.S.C. § 12112

### (Discrimination In Conditions Of Employment, Up To And Including Discharge, On The Basis Of Employee's Disability)

Plaintiff hereby incorporates by reference Paragraphs 1 through 21 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

22. At all relevant times, Defendant was a covered employer under the ADA. In July 2014, Plaintiff became disabled with a heart condition that substantially limited a number of major life activities, including walking and working in an office. Defendant regarded Plaintiff as disabled. In November 2014, Plaintiff was further disabled with a shoulder injury that substantially limited her ability to work in an office (answering phones, moving items, typing). Plaintiff sought two unpaid leaves of absence for her disabilities as a reasonable accommodation under the ADA. Although Defendant provided Plaintiff with these leaves of absence, as soon as Defendant became aware of Plaintiff's shoulder injuries and the required treatment, Defendant made the decision to place Plaintiff on a PIP and pressure her to terminate her employment with Defendant by retiring. Plaintiff's disability was either the sole reason or a motivating reason for Defendant's decision to place Plaintiff on a PIP, pressure her to retire, refuse to extend her retirement date, refuse to allow her to rescind her retirement, refuse to allow her to return to work, and to mark her as ineligible for rehire. Defendant was motivated by a discriminatory animus toward Plaintiff's disabilities and a desire to retaliate against Plaintiff for engaging in the protected activity of seeking unpaid leave as a reasonable

8
COMPLAINT OF ARLENITA CAMACHO FOR DAMAGES AND EQUITABLE RELIEF

Case 1:15-cv-00034 Document 1 Filed 09/24/15 Page 8 of 11

accommodation under the ADA. Defendant willfully violated the ADA, acting with reckless disregard for its obligations under the statute.

//

## SECOND CAUSE OF ACTION

## VIOLATION OF FMLA; 29 U.S.C. § 2615

**(Interfering With Leave Of Absence; Retaliating Against Employee Who Sought A Leave Of Absence; Discriminating Against Employee For Opposing Unlawful Practices)**

Plaintiff hereby incorporates by reference Paragraphs 1 through 22 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

23. At all relevant times in 2014 and 2015, Plaintiff was a covered employee under the FMLA and Defendant was a covered employer under the FMLA. Plaintiff was entitled to leave under the FMLA in July 2014 in order to treat her heart condition and in November 2014 in order to treat her shoulder injury, both of which are serious medical conditions. Plaintiff provided Defendant with sufficient notice of her intent to take leave both in July 2014 and November 2014. Defendant interfered with the FMLA benefits to which Plaintiff was entitled. It did so on November 20, 2014 when it placed Plaintiff on a PIP—thereby failing to reinstate her to the same or comparable position following her initial FMLA leave in July 2014. Defendant further interfered with Plaintiff's rights later in November 2014 when it pressured Plaintiff to retire and processed her retirement. Finally, following Plaintiff's leaves of absence under the FMLA, Defendant refused to reinstate Plaintiff to the same or a comparable position in February and March of 2015. In addition, Defendant retaliated against Plaintiff for taking protected leaves of absence under the FMLA. Plaintiff sought protected FMLA leaves in July and November of 2014. In response, Defendant placed Plaintiff on a PIP, pressured her to retire, caused her to retire, refused to extend her retirement date, terminated her, marked her ineligible for rehire, and refused to reinstate her. There exists a causal connection between the protected activity and the adverse actions. The foregoing violations of the FMLA by Defendant were willful.

## THIRD CAUSE OF ACTION

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

*(Ramos v. Docomo Pacific, Inc.)*

Plaintiff hereby incorporates by reference Paragraphs 1 through 23 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

24. There are clear public policies in federal statutes against: (i) retaliating against employees who take protected leaves of absence (the FMLA); (ii) discriminating against employees on the basis of a disability (the ADA); and (iii) retaliating against employees who request unpaid leave as a reasonable accommodation for a disability (the ADA). Allowing an employer to terminate and/or constructively discharge an employee under circumstances like those involved in Plaintiff's termination and/or constructive discharge would jeopardize the foregoing public policies. In firing and/or constructively discharging Plaintiff, Defendant was motivated by a discriminatory animus toward Plaintiff's disability and a desire to retaliate against Plaintiff for availing herself of her rights under the ADA and the FMLA. There was no overriding business justification for Defendant's conduct.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

## PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1. Award Plaintiff back pay and front pay under the ADA (42 U.S.C. § 12117(a) and 42 U.S.C. 2000e-5(g)), each in an amount according to proof as well as interest thereon;

2. Award Plaintiff damages under the FMLA for lost wages, salary, employment benefits, or other compensation (29 U.S.C. § 2617(a)), each in an amount according to proof as well as interest thereon;

3. Award Plaintiff reinstatement under the ADA (42 U.S.C. § 12117(a)) and the FMLA (29 U.S.C. § 2617(a)(1));

4. Award Plaintiff compensatory and punitive damages under the ADA in the amount of $300,000 (42 U.S.C. § 1981a(b));

5. Award Plaintiff liquidated damages under the FMLA in an amount according to proof as well as interest thereon (29 U.S.C. § 2617(a)(1)(A)(iii));

6. Award Plaintiff compensation for damages, general damages and punitive damages attributable to her wrongful termination in violation of public policy of the Territory of Guam;

7. Award Plaintiff her attorney's fees and costs of suit under each of the ADA (42 U.S.C. § 12117(a) and 42 U.S.C. 2000e-5(k)) and the FMLA (29 U.S.C. § 2617(a)(3)); and

8. Award Plaintiff any and all other relief this Court deems just and proper.

Dated: September 24, 2015  SEBASTIAN MILLER LAW, P.C.

By: /s/ Sebastian L. Miller
Sebastian L. Miller
Attorneys for Plaintiff Arlenita A. Camacho

Dated: September 24, 2015  THE LAW OFFICE OF JOHN RICHARD BORDALLO BELL

By: /s/ John R.B. Bell
John R. B. Bell
Attorneys for Plaintiff Arlenita A. Camacho

11
COMPLAINT OF ARLENITA CAMACHO FOR DAMAGES AND EQUITABLE RELIEF

Case 1:15-cv-00034   Document 1   Filed 09/24/15   Page 11 of 11